THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, complainant-respondent,

*v.*

FERD R. PATZOWSKY et al., defendants-appellants.

[Argued October 28th, 1941. Decided January 9th, 1942.]

50

*Messrs. Bleakly, Stockwell & Zink (Mr. Henry F. Stockwell,* of counsel), for the complainant-respondent.

*Messrs. Cassman & Gottlieb (Mr. Harry Cassman,* of counsel), for the defendants-appellants.

The opinion of the court was delivered by

PORTER, J.

This appeal is from a decree of the Court of Chancery advised by Vice-Chancellor Sooy setting aside as fraudulent an assignment made by Patzowsky, appellant, to his sister Louise H. Ward, appellant, of his interest in certain trust funds created by the will of his deceased father, Richard Patzowsky.

Under the provisions of this will three trust funds were created for three daughters of testator, two for $75,000 each for two daughters who had married (one of whom is Mrs. Ward), and one for $100,000 for a daughter who had not married with a provision that she be paid $25,000 out of the trust fund upon her marriage. She has never married. The ages of these daughters at the time of the hearing were 56, 58 and 59 years, respectively. The two who married are widows. There were no children born of any of them. Each of these trusts contained identical provisions that the income be paid to the beneficiary named for life and at her death the *corpus* be paid to her issue and if she should die without

issue, or if any issue should die before reaching the age of 21 years, the *corpus* be paid to Patzowsky.

The facts are that Patzowsky owned property in Atlantic City which he mortgaged to respondent for $250,000. The mortgage was in default and was foreclosed, the sale resulted in a deficiency of $132,724.04 for which sum a judgment was entered against Patzowsky in the Supreme Court by confession on Patzowsky's bond which accompanied the mortgage. The judgment was entered on August 16th, 1938, and an unsuccessful attempt was made to set it aside. He petitioned the Supreme Court to open the judgment on August 29th, 1938, at which time a rule to show cause was allowed which contained a restraint against any proceeding "on the execution, if any, issued on the said judgment." This rule was vacated on December 14th, 1938, from which ruling an appeal was taken to this court. It resulted in an affirmance on May 15th, 1939. (*122 N. J. Law 482.*) Meanwhile, on November 19th, 1938, at which time the respondent was restrained from execution proceedings as stated, Patzowsky made the assignment in question to Mrs. Ward.

This brother and sister lived in Atlantic City and Ventnor, respectively, and were in close touch with each other. She admittedly knew in detail of her brother's financial difficulties. He went to her for financial assistance and received it. She loaned him money in 1935 under a collateral agreement assigning his interest in the trust funds and depositing with her certain securities as collateral security for the debt.

The Vice-Chancellor found from the proofs that on November 19th, 1938, when the assignment was made that Patzowsky had received from Mrs. Ward advances amounting to $20,654.33 although it may be noted that the agreement itself fixes the amount at $17,041.26. By the terms of the November 19th agreement and assignment she released him from liability to repay the indebtedness and assumed the payment of a note of Patzowsky's for $5,000, then reduced to $4,000 held by the Ventnor National Bank and on which she was an accommodation endorser, and he turned over to her a note to his order of the Hermann Restaurant Co. for $6,000 on which she later collected $3,500 in full settlement. That the

52

total consideration for the said assignment therefore was $21,154.33 and if added to that sum advances made later of $9,307.46 the total consideration amounts to $30,461.79.

Patzowsky admits his insolvency but denies that the assignment to Mrs. Ward in November, 1938, caused that condition. Whether so or not the proofs clearly indicate that Mrs. Ward was fully aware of the true conditions. She was fully protected by the 1935 agreement and the securities in her possession for the advances she had made. The market value of the securities alone was sufficient to liquidate the indebtedness. She chose, however, to deliver to him the securities (which he sold and used the proceeds for purposes not disclosed by the proofs) and to substitute for them and for the assignment she had since 1935 of his interest in the trust funds as further security for his debt to her, the new agreement assigning his entire interest in the trust funds in consideration of what he then owed her. In addition to this written agreement they now say that there was a verbal agreement that Mrs. Ward was to make additional future advances up to $30,000. Counsel was kept in ignorance of this and Mrs. Ward's testimony is not at all clear as to whether this verbal understanding was made contemporaneously with the written agreement or at a later date. Patzowsky's attorneys who had represented him throughout also represented Mrs. Ward and doubtless were fully acquainted with the facts.

The effect of this assignment was to divest Patzowsky of any property or property rights upon which levy could be made by respondent. That it seems to us was the purpose of it and Mrs. Ward knew that to be the fact. Her denial of knowledge of any fraudulent intent is not convincing in the light of the relationship and close contact between her and her brother and proper inference to be drawn from the proofs and the entire circumstances. She at least had before her facts which put her on inquiry and which were equivalent to notice of fraudulent intent. This was the rule laid down by this court in *Tantum* v. *Green, 21 N. J. Eq. 364.* That case is analogous to the instant case, we think it controlling and that it fully sustains the setting aside of the assignment and the control of the funds by a receiver as provided in the

decree. We concur in the observation of the Vice-Chancellor that "if Mrs. Ward did, in fact, fail to see the transaction as it would have presented itself to the ordinarily prudent person the loss must fall on her and not the complainant." Having in mind that Patzowsky admits that he was insolvent when the questioned assignment was made, the statutes *N. J. S. A. 25:2-9* and *25:2-10* provide that such conveyance is fraudulent as to creditors unless made for a valid consideration and in good faith. The Vice-Chancellor concluded that he was unable to determine from the proofs that the consideration was not a fair equivalent for the assignment but concluded, rightly we think, as stated that there was lacking good faith by both Patzowsky and Mrs. Ward. *Cf. Hersh* v. *Levinson Bros., Inc., 117 N. J. Law 131.*

While we are in accord with the Vice-Chancellor's conclusions still we are of the opinion that the decree goes beyond what is required to safeguard the levy of respondent by decreeing that the receiver sell Patzowsky's interest in these trust funds at this time. The *corpus* of these funds is in excess of their face value and is greatly in excess of respondent's judgment. What a sale would produce is of course not known but the nature and conditions of the trusts would indicate that a sale would probably not produce anywhere near the real value. The only proofs before the court concerning the present values of Patzowsky's remainder interest while unsatisfactory as pointed out by the court as being "distress value" still it is the only criterion we have. These witnesses gave as their opinion that the present value was $10,000. If that testimony has any value whatever it must give pause to a sale which would produce so inadequate a price.

The decree should be modified but only to the extent that there be impressed on the interest of Patzowsky in the trust funds a lien of the respondent's judgment and that the receiver shall not be authorized to sell or otherwise dispose of same pending the vesting of the right of possession in Patzowsky in the fund or any part thereof and as then may be ordered by the Court of Chancery.

To this extent the decree appealed from will be modified.

54

*For affirmance*—WELLS, J.   1.

*For modification*—THE CHIEF-JUSTICE, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ.   12.