Daniel R. SPAIGHT, Appellant,

v.

The AMERICAN NATIONAL BANK et al.,
Appellees.

No. 10952.

Court of Civil Appeals of Texas.

Austin.

April 11, 1962.

Rehearing Denied May 2, 1962.

Black & Stayton, Austin, for appellant.

Brown, Sparks & Erwin, Will G. Barber,
Austin, Robert A. Scardino, Houston, Kyle
& Walker, San Marcos, for appellees.

HUGHES, Justice.

The American National Bank of Austin,
Texas, trustee named in the will of Mrs.
Mattie H. Glover, brought this suit for
a declaratory judgment determining those
to whom it should distribute the corpus of
decedent's estate. The question presented
requires a construction of the will of testa-
trix.

Mrs. Mattie H. Glover, a resident of Hays County, Texas, died December 25, 1925, in New Orleans, Louisiana, leaving a will dated May 21, 1925, which will was duly probated in Hays County. She died a feme sole, leaving as survivors two daughters, Gladys and Dorothy, the only children born to her. Mrs. Glover was an only child.

Gladys was the wife of Harold W. Peterson. She died intestate and without issue, June 30, 1931 in Louisiana. Any interest which Gladys, at the time of her death, may have owned in her mother's estate passed, under Louisiana law, to her sister, Dorothy.

Dorothy was the wife of Daniel R. Spaight, appellant, when she died March 27, 1959, without issue. She left a will, duly probated in Virginia, by the terms of which appellant was given her entire estate.

The adversary parties are appellant, Mr. Spaight, who claims the entire estate of Mrs. Glover and, in opposition, numerous collateral kindred and heirs of Mrs. Glover, each of whom claims his share as an heir under the statutes of descent and distribution of this State. Title 48, Vernon's Ann. Civ.St.

Mrs. Glover, by her will, left her estate to the appellee Bank in trust "for the purpose of carrying out the provisions and trusts herein mentioned." The duration of the trust was stated to be:

"The trust here created is to continue in force and effect so long as my daughters, Dorothy Jackson and Gladys Glover, or either of them, may live, and the powers here given shall be exercised by my said trustee for the purposes herein set forth, so long as either of my said daughters shall live."

Each of the daughters, Dorothy and Gladys was to receive from the trustee, quarterly, one half of the net revenues of the estate so long as both should live.[1]

The nature of the estate left her daughters was described in the will in this language:

"During the life time of my said two daughters, Dorothy Jackson and Gladys Glover, or during the life of either of them, it is my will that the net income and revenue from my estate be applied to their respective use and benefit as hereinabove mentioned, but they shall have only a life interest or estate in the said net revenue and income from my estate, and during the time that my said daughters, or either of them, shall live, the corpus of my estate shall remain in the hands of my trustee, named herein."

The will also provided that unexpended revenues of the estate should be added to the corpus "in the hands of my said trustee."

The testatrix made provision for potential grandchildren and for payment of net revenues to the surviving daughter as follows:

"Upon the death of either of my said daughters, if such deceased daughter leaves surviving her any child or children, born to said daughter, then it is my will and desire that a one-fourth part of my estate pass to and vest in the said child or children of my deceased daughter, and my trustee herein named is directed and empowered to partition and set apart to said child or children an equal one-fourth of all of my estate remaining in the hands of said trustee at said time, which one-fourth shall be delivered to said child or children if they are of legal age, or to their legal guardian if they are minors. The remaining three-fourths of my said estate shall remain in the hands of my said trustee, the income and revenue therefrom to be paid to or applied to the use and benefit of my surviving

1. The portion payable to Gladys was to be paid to her guardian so long as guardianship was necessary.

daughter, so long as she shall live, as herein directed and provided. If either of my said daughters shall die without issue, then my trustee shall pay or apply to the benefit of the survivor, the entire net income from my estate, as is herein directed, with reference to the portion that such survivor receives while both are alive."

The will provided that the funeral expenses for her daughters should be paid by the trustee from the "funds of my estate."

The provision of the will which directly gives rise to this suit is the following:

"After the death of both of my daughters, then I will and direct that all of the estate remaining in the hands of my trustee, including the corpus of said estate, and all unexpended revenue, shall be, by my said trustee, distributed to my heirs and next of kin, who would take my estate under the laws of descent and distribution of the State of Texas, and my said trustee is here directed, in such event, to distribute my estate independently of the corporate court, by transferring, conveying and assigning to my said heirs at law, and each of them, their proper proportionate share of my estate. Said distribution may be made either in property or in money, at the discretion of my trustee, said trustee being authorized to convert all of said estate into cash, if in its discretion it deems it better or more practical to distribute said estate entirely in money."

It is the contention of appellant that the heirs of testatrix were determinable, under the will, as of the death of testatrix, and that since he has succeeded to the rights of such heirs, Gladys and Dorothy, he is entitled to recover the entire estate in the hands of the trustee Bank.

It is the contention of the adversary appellees that a determination of the heirs of testatrix, under the will, was postponed until the death of the survivor of the two daughters of testatrix, and that they, then being such heirs, are entitled to the estate in the hands of the trustee Bank in accordance with their respective interest under the statutes of descent and distribution.

The Trial Court agreed with this latter contention.

■ We agree with appellant that the rule of construction to be applied here is correctly quoted in Richardson v. Poe, 210 S.W.2d 568, Fort Worth Civil Appeals, no writ history, from 49 A.L.R. 177, as follows:

"It is a general rule of testamentary construction, so universally recognized as to render superfluous a full citation of the cases which support it, that, in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the class described as testator's heirs, or next of kin, or relations, or such persons as would take his estate by the rules of law if he had died intestate, to whom a remainder or executory interest is given by the will, is to be ascertained at the death of the testator."

The only circumstances extraneous to the will noted by appellant as bearing on the construction of the will is reflected by the following excerpt from his brief:

"The already mentioned circumstance that the will was prepared by an able attorney is strong evidence that the rule should apply. Moreover, the attorney was Mrs. Glover's first cousin and, under the construction urged by appellees, would have been eligible as a remainderman. It is doubtful that this attorney would have consciously placed himself in the position of preparing a will naming himself as one of the possible beneficiaries."

We also quote appellant's summary of and argument respecting paragraph XIII

of the will, which paragraph has not been copied herein:

"Paragraph XIII of the will provides a penalty for 'any beneficiary under this will' who opposes its probate. The penalty involves a cessation of 'any and all payments to such beneficiary,' thus clearly indicating that the testatrix believed all beneficiaries under the will would also be receiving payments thereunder. The only parties receiving payments under the will were Mrs. Glover's two daughters, who were also presumptively her sole heirs at law at the time the will was executed. Accordingly, Mrs. Glover apparently regarded her daughters as the sole beneficiaries under the will."

Appellant also relies upon other portions of the will which have been quoted herein in aid of his construction of it.

■ It is our opinion that the will construed solely from its contents or in the light of surrounding circumstances plainly evidences an intent by the testatrix to leave the corpus of her estate at the death of the survivor of her daughters, both dying without issue, to her heirs at law determinable as of that time.

Farrell v. Cogley, 146 S.W. 315, San Antonio Civil Appeals, writ denied (1912), is a case very closely in point. There the testator's brother, his only heir at his, testator's death, was left property conditionally. These conditions did not mature, and in such event the will provided:

"'Item 9. In case of the death of my said brother, John W. Farrell, within five years after my decease, or at any time thereafter and before the conveyance and delivery to him of the property and assets of my estate by said executors, it is then my will and I hereby direct that my said executors shall then dispose of said property and assets as follows:' Then follows several provisions for payment of certain sums to pastors of churches and a sum

to be invested for the care of a cemetery lot, after which comes this item: 'Hold the rest and residue of my estate subject to the order of my heirs at law according to the laws of descent and distribution of the State of Texas, and continue to manage the same until my heirs shall request delivery and conveyance to them.'"

The Court held:

"The conclusion to which we have come is that, considering the whole will, the testator intended that the future or residuary estate in his property, subject to the minor bequests and provisions, should be conveyed by his executors to the living persons who at the death of his brother answered the description of his, the testator's, heirs at law, as ascertained by the statutes of descent and distribution of this state. The only theory which would justify the position that the widow of the brother should take the future or residuary estate is that such estate had vested in the brother.

"* * * The question at issue depends, therefore, on whether or not the right to said residue was a vested estate in the brother. We think the will vested no interest in the corpus of the property in the brother. There are no words of present gift to the brother of the property, nor to the testator's heirs at law. On the contrary, the express disposition made by the will was to withhold everything, and every interest in the property itself from the brother, who testator knew was his sole heir at law at that time, and provided expressly what interest he should have in reference to it during his life, which was merely the net income. The title to the property was vested in the executors with power to control and to dispose of it, with express direction after the death of the brother during the five years, or if they had not seen proper to convey it to the brother after

five years during his lifetime, in the contingency of his reformation, to convey and deliver it after the brother's death to testator's heirs at law. It was plainly the intention of the testator that no interest whatever should vest in the brother during his life, except the right to the income payable monthly."

There are no words of present gift to the daughters, Gladys and Dorothy, of the corpus of the estate, nor to the testatrix's heirs at law. It was plainly the intention of the testatrix that no interest whatever should vest in the daughters during their lives, except the right to the income. These words are just as true here as substantially similar verbiage was in Farrell v. Cogley.

The testatrix sharply and carefully distinguished between the lifetime rights given her daughters from the disposition of her estate following their death. That such disposition was prospective in nature, not ascertainable at her death, is clearly reflected by the will.

Testatrix certainly knew when she executed the will that her only heirs then were her two daughters. She also knew that the daughters might be her only heirs when she died, but that she had potential heirs in mind who might appear after her death is demonstrated by the provision for grandchildren.

The critical provision of the will is, of course, the one directing that "*After* the death of both my daughters, *then* I will and direct that all of the estate remaining in the hands of my trustee, including the corpus of said estate, and all unexpended revenue, *shall* be, by my said trustee, distributed to my heirs and next of kin, who *would* take my estate under the laws of descent and distribution of the State of Texas. * * *" (Italics supplied.)

This provision looks to a future event, the death of her daughters. It is phrased in the future tense.

■ The use of the future tense is common in wills and its use here does not con-clusively settle the issue presented. It is persuasive, and highly so since it is coupled with an event, the deaths of the daughters, which the testatrix certainly contemplated would occur after her own demise.

There are other minor, but also persuasive matters which tend to sustain our conclusion that the Trial Court correctly construed this will.

The will provided that the funeral expenses of the daughters should be paid from the trust estate. If the trust estate after the death of the daughters was their estate, this was a waste of words.

■ The direction in the will that after the death of her daughters without issue not only the corpus of the estate but the "unexpended revenue" shall be distributed to the heirs is further indication of the intent of the testatrix that her heirs were to be determined as of such time for the reason that such unexpended income became a part of the gift. United States Trust Co. of New York v. Nathan, 196 App.Div. 126, 187 N.Y.S. 649, aff. (without opinion) 233 N.Y. 505, 135 N.E. 894, Re Southworth's Estate, 52 Misc. 86, 102 N.Y.S. 447. In the latter case the Court stated:

"While, as we have said, he (testator) could not legally provide for an accumulation of interest, yet his evident expectation that there might be an accumulation, and that it should pass with the principal and at the same time, in my opinion has a bearing on the question of whom he meant by his heirs, and tends to show that he meant those who should be his heirs when the interest had been earned. In order that the interest should vest, it must be in existence. This is different from a gift of principal, where interest might follow the gift. Both in this case go together, and the only gift in either case is found in the direction to pay over at a future time."

We attach no significance whatever to the extraneous fact that Mrs. Glover's will was prepared by an attorney who was a possible beneficiary under it. Most wills are family affairs and beget privacy. It was normal and natural, and not inappropriate, for Mrs. Glover to have her will prepared by a relative who was an able attorney even though he ultimately became a beneficiary thereunder.

We find nothing in the will or in the circumstances surrounding it to sustain an inference that Mrs. Glover intended to leave the corpus of her estate to her daughters upon the termination of the life estates expressly given them. This is an incongruity which should not be engrafted on a will by dubious construction.

The judgment of the Trial Court is affirmed.